VAN BRUNT, P. J., BARRETT, RUMSEY and O'BRIEN, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.

DELINA CREAMER, Respondent, *v.* JOHN MURRAY MITCHELL, Appellant.

*Services — royalties — the master cannot claim to be entitled to the services of a suspended servant and at the same time deny him compensation — a master, who has enjoined a servant from rescinding a contract, cannot himself refuse to perform it.*

An action was brought to recover royalties, under an agreement of which the defendant was guarantor, by which a company was authorized to make, use and sell a patented article upon payment of one-fifth of the profits as a royalty, not to be less than $2,000 a year, to the patentee, who was to receive thirty dollars per week, and was to devote his time and attention as superintendent of construction and salesman, to the enterprise for three years, or so long, during that period, as the weekly payments were promptly made, "if requested so to do" by the company; but if the company failed to pay the thirty dollars per week, the patentee was at liberty, by a notice of sixty days, to end the agreement and thereby regain his patent rights, unless the company should, in the sixty days, fulfill its obligations. The patentee, because of non-payment of his weekly royalties, gave the sixty days' notice and was thereupon immediately excluded from the shops of the company, being charged by the company with the commission of immoral acts at the shop; about the same time the company wrote that, as they construed the contract, it could, if it chose, "call upon him again at any time to act as superintendent or salesman."

Subsequently, after the expiration of the sixty days, the company began an action against the patentee for an accounting, and in a second action obtained an injunction restraining him from rescinding the contract.

*Held,* that the plaintiff was entitled to recover for the royalties;

That inasmuch as the company had informed him, at the time of his alleged discharge, that it had a right to "call upon him again at any time to act as superintendent or salesman," and as it had succeeded in obtaining an injunction which prevented the patentee from rescinding the contract, it was not in a position to insist that the contract was not still in force, and it followed that it was liable to him for the royalties secured to him by the contract.

APPEAL by the defendant, John Murray Mitchell, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 24th day of January, 1896, upon the verdict of a jury directed by the court after a trial at a Trial Term of the Supreme Court held in and for the county of New York, and also from an order entered in said clerk's office on the 23d day of January, 1896, denying the defendant's motion for a new trial made upon the minutes.

The action was brought to recover a balance due of royalties agreed to be paid by the Safety Electric Construction Company to plaintiff's assignor, Henry Creamer, and guaranteed by the defendant.

Creamer was the owner of patents upon a steam pump trap, and under his agreement with the company they were to have the exclusive right to make, use and sell the patented article, and were to pay Creamer one-fifth of the profits as a royalty, guaranteeing him not less than $2,000 a year. Creamer was to receive thirty dollars a week on account of such royalty, and was to devote his time and attention for three years (or so long within such period as such weekly payments were promptly made) to the welfare of the enterprise as superintendent of construction and salesman, " if requested so to do " by the company. In case the company failed to pay the thirty dollars a week, if Creamer so elected and served notice in writing on the president of the company to that effect, all the rights secured to the company were, after a period of sixty days from such notice, to revert to and become the property of Creamer, unless within such period the company should have fulfilled its unfulfilled obligations. If the company desired to cancel the contract, it was to do so, if at all, on the first day of June in any year, after first paying any amount due Creamer up to date. The defendant's guaranty was that the thirty dollars a week should be promptly paid, and was to run a period of not more than three years from July 11, 1890, and only so long as said license should remain uncanceled and Creamer should continue to render the services provided in the contract, pursuant to the terms thereof, within the said period of three years.

Creamer received his weekly royalties under the agreement up to some time in December, 1891. On January 30, 1892, $225 of such

royalties remained unpaid, and on that day he notified the defendant, as president of the company, in writing, of the arrearage, and stated that he elected to terminate the contract under the provision thereof permitting such cancellation at the end of sixty days if the company's obligations continued to be unfulfilled. By a letter dated the same day (January thirtieth), but which Creamer says he did not receive until a day or two after, the company requested him to deliver up all the keys that he had belonging to the shop, with which he complied. On February first Creamer went to the company's place of business, found the door locked, and was told by the person in charge that he had been instructed to allow him to have nothing to do with the work, and, further, that the men were not to obey any of his instructions. To explain this demand for the keys and refusal to permit him to work, the defendant produced witnesses who testified that Creamer had been guilty of immoral conduct at the factory. Creamer contradicted the testimony as to his immorality by his own evidence and that of other witnesses. On February second Creamer's attorneys wrote to the company, reciting the facts of the demand for the keys and the refusal to permit him to work, stating that Creamer was ready and willing to continue his work pursuant to the terms of the contract, if requested by the company, and concluding with the statement: " We take it that you desire to dispense with his services as superintendent of construction and salesman, and will so construe the action taken by you unless otherwise notified at once." To this the company replied the next day, February third, informing Creamer's attorneys that Creamer had had poor success with his work ; that the reason that they demanded the keys and refused to permit him to go there further was because of his immoral acts at the shop, which had a bad influence on the workmen and was detrimental to the business; and that, as they construed the contract, they could, if they chose, " call upon him again at any time to act as superintendent or salesman." Creamer testifies that he was ready and willing, at all times, to act in that capacity if asked. On February fourth he wrote to the company that he would be glad to respond to any request they might make to continue his services.

On March 28, 1892, Creamer's attorneys wrote to the defendant as president of the company, making three demands in Creamer's

behalf, based upon the contract: (1) For an accounting; (2) for the payment of $500, and (3) the payment of $465, the amount of guaranteed royalties up to March 26, 1892. On March twenty-ninth the defendant, as president, replied that under the third demand the company would pay under protest the $465. On the same day Creamer's attorney notified the company that on their failure to comply with the terms suggested by the letter of March twenty-eighth, he should claim an absolute forfeiture of the company's rights under the contract. The company tendered Creamer the $465 on March thirtieth; he refused to accept it, and on April thirtieth the company sent a check for that amount for him to his attorneys.

On March thirtieth the sixty days had expired since Creamer's notice of election to cancel the contract. On that date the company commenced an action in the Supreme Court against Creamer for an accounting, and a preliminary injunction was obtained restraining him from transferring any of the patents or forfeiting any of the company's rights under the contract, which injunction was subsequently continued *pendente lite.* On or about April 2, 1892, the company commenced another action in the Supreme Court against Creamer for an injunction restraining him from rescinding the contract; in his answer thereto Creamer claimed that the company had not paid him in full and had forfeited all its rights under the contract. The two causes were tried together, and in December, 1892, the complaint in the first action was dismissed, and in the second action the injunction was granted.

In August, 1891, Creamer assigned to his wife, the plaintiff, the patents under which the company was working, and in June, 1893, he assigned to her all his interest in his contract with the company. After March 30, 1892, the company never paid to Creamer or to the plaintiff anything on account of royalties under the contract, and the royalty sought to be recovered in this action is that which accrued from March 30, 1892, to July 10, 1893, the expiration of the three years provided for under the guaranty, for the full amount of which the court directed a verdict.

*Carlisle Norwood,* for the appellant.

*John A. Straley,* for the respondent.

O'BRIEN, J.:

The plaintiff's claim for the thirty dollars a week royalty has been met by three separate defenses, only two of which, however, were seriously urged upon the trial or upon this appeal. One of these was, that the plaintiff's assignor failed to devote his time and attention to the best of his ability to the welfare of the enterprise as superintendent of construction and salesman, and acted in an improper manner, in consequence of which the company was compelled to and did discharge him from its employ sometime prior to March, 1892; and the other, that he rescinded the contract between the company and himself, and voluntarily withdrew from any connection with the company, and refused to perform the covenants and conditions of the agreement. The learned trial judge having directed a verdict for the plaintiff, the questions upon this appeal are narrowed down to a consideration as to whether or not there was sufficient evidence proper to be submitted to the jury in support of either of these defenses.

We have observed that under the agreement Creamer was to act as superintendent or salesman " if requested so to do " by the company, so long as his guaranteed royalty was promptly paid. There is no evidence that he did not act when requested as superintendent or salesman until after the company had failed in its duty to make prompt payment of his guaranteed royalties. At the time the company took from him the keys of the establishment and refused to allow him to have anything further to do with the work, he had been unpaid for over seven weeks. And, assuming that Creamer was guilty of the improper conduct of which he was accused, the company could not avoid the payment of the weekly royalty by discharging him from its employ. Creamer was not an ordinary employee upon a weekly wage. By the contract between him and the company, he licensed the company to make and sell his patented machines during the whole lifetime and term of the patents, and it agreed to pay him one-fifth of the profits, or not less than $2,000 a year, the $30 a week being on account thereof. If the company desired, it could cancel the agreement on one day only in any year, and that the first day of June; and if it permitted that day to go by, it was deemed to have waived the right to cancel the agreement before the first of June of the succeeding year. The company

could not turn him adrift whenever it conceived it had cause, and at the same time hold on to all his patent rights. But Creamer was not discharged. Even after refusing to permit him to work, while complaining to his attorneys of his alleged misconduct, the company still insisted that it could if it chose, "call upon him again at any time to act as superintendent or salesman." And thereafter Creamer did again offer his services to the company.

It is hard to understand how the defendant can consistently claim that the company discharged Creamer, and at the same time claim that he voluntarily withdrew from any connection with the company. As we have seen, however, the company did not discharge him, but asserted a right to avail of his services at any time they chose. True, Creamer gave the company the sixty days' notice authorized by the contract, that unless it paid him his guaranteed royalty he should insist upon a cancellation of the agreement. But on the day of the expiration of this notice, the company tendered the amount of weekly royalties due to Creamer, and brought an action against him in this court, in which a preliminary injunction was obtained, restraining him from rescinding the contract, and that injunction was never lifted during the litigation. Finally, in a second action, commenced a few days later, but decided at the same time, Creamer, unsuccessful in his contention that the company's rights under the contract were gone, was forever enjoined and restrained from rescinding the contract on the ground, as alleged by him, of the company's unfulfilled obligations up to March 30, 1892. From that time up to the end of the three years limited in the contract and guaranty, the agreement continued uncanceled, the company had the benefit of the license, and it is undisputed that during that period it paid nothing on account of guaranteed royalty. Whatever may have been Creamer's position, therefore, he was not permitted to retain it, but the company insisted, and this insistance was enforced by injunction, that he had no right, and should not be permitted to rescind the contract. The company having taken such a stand, it cannot now contend that it is under no liability for royalties, for this would permit it to get the benefit of the license while refusing to pay for it. As long as it claimed that the contract remained in force, and by injunction restrained Creamer from rescinding it, this gave the latter the right at any time to withdraw

from his position, which he did, concede the company's right to the license and demand his royalty. In thus receding, Creamer was simply acquiescing in the view taken by the company and supported by the injunction. Whether it ever chose to call upon Creamer to act as superintendent or salesman again or not, was an option which it might not take advantage of. And he, even if called upon, was not bound to render such service without being promptly paid.

We are, therefore, of opinion that the learned judge below was right in holding that there was nothing left for the consideration of the jury, and in directing a verdict for the plaintiff for the amount claimed.

The judgment should be affirmed, with costs.

BARRETT, RUMSEY, PATTERSON and INGRAHAM, JJ., concurred.

Judgment affirmed, with costs.